## M. J. VERNER V. C. C. BOSWORTH, *et al.*

CATTLE; *Contagious Disease; Replevin.* Where cattle are taken up, inspected and placed in the custody of the sheriff under the provisions of §§ 3, 4 and 5, ch. 161, Laws of 1881, the report of the inspectors and the order of the justice to the sheriff commanding the latter to keep the cattle until the 1st day of November next ensuing, are not conclusive with respect to the animals themselves, or the owner thereof, and the owner has his action of replevin from the very moment that the sheriff takes possession of the cattle, to try the legality and the validity of the proceedings, and also to have his rights to the possession of the cattle adjudged.

### *Error from Greenwood District Court.*

REPLEVIN, brought by *Bosworth* and another against *Verner*, as sheriff of Greenwood county, to recover the possession of certain cattle. Trial at the August Term, 1881, of the district court, and judgment for the plaintiffs. The defendant brings the case here. The opinion states the facts.

*Z. Harlan,* county attorney, and *Clogston & Fuller,* for plaintiff in error.

*Peyton, Sanders & Peyton,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: On March 24, 1881, two citizens of Greenwood county made complaint in writing to M. J. Verner, as sheriff of that county, that there were at Bachelor creek, within the county, wild or undomesticated cattle infected and diseased with what is commonly known as Texas, splenic, or Spanish fever, and requested the sheriff to take them into custody until the charges in the complaint could be investigated in accordance with the provisions of ch. 161, Laws of 1881. Thereupon the sheriff took possession of the cattle, and immediately gave notice thereof to one F. H. Clark, a justice of the peace of that county; whereupon the justice immediately summoned three resident citizens of the county to appear, on March 26, 1881, before him for the purpose of inspecting the cattle. When the persons so summoned appeared, they were sworn by the justice to faithfully discharge their duties as inspectors of the cattle aforesaid, and without delay to make report to him of their findings in the premises. The inspectors proceeded to examine the cattle in custody of the sheriff, and after examination they reported in writing to the justice that the cattle, comprising a lot of forty-seven head, were of the kind commonly known as Indian or Texas cattle; that they were owned by one C. C. Bosworth and Joseph Willard; and that the condition of the same was such as to endanger the health of other cattle in the vicinity, by reason of probable contagion. The justice forthwith issued to the sheriff his order in writing, commanding him to keep the cattle in his custody and under his control until the first day of November next ensuing, at which time he was directed to deliver them to their owners upon payment to the county treasurer of Greenwood county of all costs and expenses which might occur by reason of the taking and detaining

them; and in case the costs and expenses were not paid within ten days after the first day of November ensuing, the sheriff was commanded to advertise and sell the cattle, or so many thereof as might be necessary to pay the costs and expenses. On the 28th day of March, 1881, C. C. Bosworth and R. P. Willard filed their petition in replevin against M. J. Verner, (the sheriff,) to recover possession of the cattle. Verner thereafter filed his answer, justifying his possession of the cattle under the proceedings had upon the complaint made to him. Upon the trial, the court permitted plaintiffs below to prove that at the time the complaint was made to the sheriff the cattle were not diseased; that they were not liable to communicate any contagion to other cattle; and that they were not wild or undomesticated cattle. Counsel of plaintiff in error (defendant below) complain of this ruling, and contend that the report of the inspectors was of the nature of a verdict of a jury; that the order of the justice thereon operated as a judgment; and that it cannot be attacked or impeached in any collateral proceeding. Conceding that §§ 3, 4 and 5 of ch. 161 are constitutional, on the ground that the state may enact sanitary and police laws for the purpose of preventing the spread of infectious diseases, and may establish reasonable inspection regulations, including the taking into custody of wild or undomesticated cattle alleged to be infected with disease, yet we cannot hold that the proceedings had upon the complaint made to the sheriff are conclusive with respect to the animals themselves, or upon the owners thereof. The owners of the cattle cannot be deprived of their title, nor of the right of possession, by proceedings which did not give them opportunity to have their rights adjudged, and of which proceedings they had no notice, and to which they were not parties. In this country in times of peace there is no royal road to the condemnation or confiscation of a man's property irrespective of his interest and his right to be heard. Here the law proceeds upon inquiry, hears before it condemns, and renders judgment only after trial. Sec. 5 of ch. 161 merely provides that the inspectors shall examine

the cattle, and makes no provision for any trial or defense on the part of the owner before judgment and sentence. Counsel claim that the proceedings under the statute "are proceedings *in rem;* that thereby the justice, as a court, fixes the *status* or condition of the property proceeded against, and a judgment founded upon such proceedings is a solemn declaration upon the *status* or condition of the thing, and *ipsa facto* renders it what it declares it to be." In all proceedings *in rem,* whether against things guilty, things indebted, or things hostile, except the last, notice of seizure and libel must be given to the world, if the world is to be bound by the decree. In this way, the owner gets notice along with the rest of the world, and may appear for his property or not. Notice in actions *in rem* is doubly given by seizure and by publication, and notice is the life of the action, as citation or subpena is in a personal case. (Waples on Proceedings *In Rem,* 88.) Some of the decisions treat the publication as of little importance, and hold that the law regards the seizure of things as constructive notice to all the world, and all persons concerned in interest are considered as affected by this constructive notice, and that the seizure and not the publication gives jurisdiction. (*The Mary,* 9 C. R. 126, 144; *Bradstreet v. The Neptune Ins. Co.,* 3 Sumner, 609; *Nations v. Johnson,* 24 How. 205; *Hollingsworth v. Barber,* 4 Pet. 475.) Yet no decision goes so far as to decide that things guilty may be seized and condemned without notice, and without giving a party having a right in or to the thing an opportunity to have his right tried and adjudged. It would be an unjustifiable hardship, an act of real robbery, to debar such a party of this right and yet construe the order of seizure and condemnation against him as conclusive. While therefore we may assume that cattle complained of and proceeded against under the provisions of said §§ 3, 4 and 5 may be lawfully taken up and kept in custody, we must further hold that the report of the inspectors and order of the justice are at most only *prima facie* evidence of the facts therein set forth. They are not conclusive as a

43—28 KAS.

judgment until the owner has his day in court to contest the charges of the complaint whereby it is sought to deprive him of the possession of his property, and make such property liable for costs and expenses. Therefore he has his action of replevin from the very moment that the sheriff takes possession of the cattle, until the statute of limitations bars such an action, to try the legality and validity of the proceedings whereby his property is taken. If any irregularity or injustice should intervene that would render the taking of the property void, the same would also render the possession by the sheriff, and all other proceedings connected therewith, void. If the cattle are not, at the time the complaint is made to the sheriff, wild or undomesticated cattle,. infected or diseased with the Texas, splenic, or Spanish fever, the owner thereof would be entitled to restoration of the same by judicial proceedings. (*Gilchrist v. Schmidling,* 12 Kas. 263.) Thus, if wild or undomesticated cattle, infected or diseased with Texas, splenic, or Spanish fever, are in a condition to endanger the health of other cattle in the vicinity, by reason of probable contagion, where they are running at large, citizens interested may have them taken up and placed in the custody of the sheriff under the provisions of the statute. But these proceedings, being *ex parte,* do not determine absolutely the owner's rights. If upon a judicial hearing it shall be ascertained that the complaint was made without cause, and that the cattle complained of are not within the terms of the statute, the owner thereof would clearly be entitled to have them returned to him; and thus he has his remedy by due course of law, notwithstanding the proceedings in the first instance are *ex parte.*

Counsel suggest that the owner of cattle taken up under the provisions of this statute has notice prior to the sale for costs and expenses, and that no other or further notice is necessary or required in order to give him an opportunity to have his rights adjudged. This notice comes too late to benefit the owner in contesting the complaint, if the report of the inspectors and the order of the justice are conclusive.

Such notice, being subsequent to the alleged proceedings condemning the property, is not notice of the action against the property, and does not debar an owner from his right to try the legality and validity of the proceedings by an action in replevin.

Again, it is urged that some evidence was admitted upon the trial, relating to the condition of the cattle subsequent to the commencement of this action. As this evidence was merely a continuation of other evidence tending to show that the cattle were domestic cattle and not infected or diseased with Texas, splenic, or Spanish fever at the time the complaint was made under which they were taken from their owners, it was not wholly irrelevant or incompetent.

The judgment of the district court will be affirmed.

All the Justices concurring.