ST. LOUIS MERCHANTS' BRIDGE TERMINAL RY. CO. v.
UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 18, 1911.)

No. 3,337.

*(Syllabus by the Court.)*

**1. ANIMALS (§ 34\*)—CONTAGIOUS DISEASES—TRANSPORTATION—RESTRICTIONS.**

The receipt outside a quarantine district and subsequent transportation by a railroad company of live stock that was received for transportation, and was transported by a previous carrier from a quarantined district in one state into another state, is not an offense under the act relating to quarantine districts of March 3, 1905 (chapter 1496, 33 Stat. 1264 [U. S. Comp. St. Supp. 1909, p. 1185]).

[Ed. Note.—For other cases, see Animals, Dec. Dig. § 34.\*]

**2. STATUTES (§§ 241, 263\*)—PENAL STATUTE NOT EXTENDED BY CONSTRUCTION TO PARTIES OR ACTS NOT DENOUNCED.**

A penal statute plain in its terms which creates and denounces a new offense should be strictly construed.

It may not be extended by construction to those who are not within the class of parties denounced by it, nor to acts which are not by the expressed will of the legislative department clearly made offenses under it, although such parties or acts may in the opinion of a court be as vicious as those within its terms.

Ex post facto construction is as pernicious as ex post facto legislation.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323, 344; Dec. Dig. §§ 241, 263.\*]

**3. ANIMALS (§ 34\*)—REGULATIONS OF EXECUTIVE OFFICER INEFFECTIVE TO ADD OFFENSES TO LAW.**

Regulations of the Secretary of Agriculture under section 3 of the quarantine act of March 3, 1905 (chapter 1496, 33 Stat. 1265 [U. S. Comp. St. Supp. 1909, p. 1186]), are ineffective to add to the class of railroad companies or to the acts denounced by that statute and railroad companies that in violation of such regulations receive and transport outside a quarantined district live stock which has been received for transportation, and has been transported by a previous carrier from the quarantined district in one state into another state, are not punishable therefor.

[Ed. Note.—For other cases, see Animals, Dec. Dig. § 34.\*]

**4. CONSTITUTIONAL LAW (§ 66\*)—REGULATIONS OF EXECUTIVE OFFICER—DELEGATION OF POWERS.**

A legislative body may delegate to an executive or administrative officer the power to find some fact or situation on which the operation of a law is conditioned, or to make and enforce regulations for the execution of a statute according to its terms.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 115, 117–122; Dec. Dig. § 66.\*]

**5. CONSTITUTIONAL LAW (§ 60\*)—DELEGATION OF LEGISLATIVE POWER.**

A legislative body cannot, however, delegate its lawmaking power, its power to exercise the indispensable discretion to make, to add to, to take from, or to modify a statute.

It cannot delegate its power to add parties or acts to those punishable under a statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 89, 90, 93; Dec. Dig. § 60.\*]

In Error to the District Court of the United States for the Eastern District of Missouri.

*\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes*

The St. Louis Merchants' Bridge Terminal Railway Company was convicted of failing to placard the cars and to stamp the waybills of cattle in quarantined districts, and brings error. Reversed and remanded.

Tyson S. Dines (J. L. Howell, on the brief), for plaintiff in error.

Truman P. Young, Asst. U. S. Atty. (Charles A. Houts, U. S. Atty., on the brief), for the United States.

Before SANBORN and VAN DEVANTER, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. The St. Louis Merchants' Bridge Terminal Railway Company complains that it has been convicted and fined for failing to placard the cars and to stamp the waybills of certain cattle and sheep which had been received by previous carriers in quarantined districts in Texas without certificates of inspection and had been transported to St. Louis by previous carriers where they were delivered to it and whence they were carried by it to the national stockyards in Illinois. The ground of its complaint is that its receipt of the cattle and sheep and its failure to placard the cars and stamp the waybills constituted no violation of any law of the United States. Counsel for the government, on the other hand, contend that these acts are punishable under Act March 3, 1905, c. 1496, § 1, 33 Stat. 1264 (U. S. Comp. St. Supp. 1909, p. 1185). The question is whether or not that statute includes in the class subject to its penalties a carrier that neither receives the live stock for transportation in nor transports it out of the quarantined district. The provisions of that act which condition the answer to this question are these:

By section 1 the Secretary of Agriculture is authorized to quarantine any district when he finds that live stock therein are affected with any contagious or infectious disease and is directed to give notice of his action—

"to the proper officers of railroad, steamboat or other transportation companies doing business in or through any quarantined state or territory, or the District of Columbia, and to publish in such newspapers in the quarantined state or territory, or the District of Columbia, as the Secretary of Agriculture may select, notice of the establishment of quarantine."

Section 2 provides:

"That no railroad company * * * shall receive for transportation or transport from any quarantined state * * * or from the quarantined portion of any state * * * into any other state * * * any cattle or other live stock, except as hereinafter provided."

Section 3 empowers the Secretary of Agriculture to make regulations to—

"govern the inspection, disinfection, certification, treatment, handling and method and manner of delivery and shipment of cattle or other live stock from a quarantined state * * * and from the quarantined portion of a state * * * into any other state, * * * and the Secretary of Agriculture shall give notice of such rules and regulations in the manner provided in section 2 (one) of this act for notice of establishment of quarantine."

Section 4 declares that live stock—

"may be moved from a quarantined state * * * or from the quarantined portion of a state * * * into any other state * * * under and in compliance with the rules and regulations of the Secretary of Agriculture made and promulgated in pursuance of the provisions of section 3 of this act: but it shall be unlawful to move, or to allow to be moved, any cattle or other live stock from any quarantined state * * * or from the quarantined portion of any state * * * into any other state * * * in manner or method or under conditions other than those prescribed by the Secretary of Agriculture."

The provisions of section 5 have no relevancy to the issue under consideration.

Section 6 provides that any person, company, or corporation "violating the provisions of sections 2 or 4" shall be punished by fine or imprisonment, or both.

The Secretary of Agriculture made regulations under section 3 to the effect that, when cattle or sheep of the character of those carried in the case at bar were shipped from a quarantined district, the transportation company should affix a descriptive placard to each side of each car carrying them, and should stamp the waybills with descriptive words such as "uninspected exposed cattle" and "exposed sheep for slaughter," and that:

"Whenever such shipments are transferred to another transportation company or into other cars or into other boats, or are rebilled or reconsigned to a point other than the original destination, the cars into which said cattle or sheep are transferred and the new waybills * * * shall be marked as herein specified for cars first carrying said cattle or sheep and for the billing, etc., covering the same. If for any reason the placards required by the regulations are removed from the car, or are destroyed or rendered illegible, they shall be immediately replaced by the transportation company or its agents, the intention being that legible placards shall be maintained on the cars from the time of shipment until they arrive at destination and the disposition of the cars is indicated by an inspector of the Bureau of Animal Industry."

[2] A penal statute which creates and denounces a new offense, and the act under consideration is such a statute, should be strictly construed. A man ought not to be punished unless he falls plainly within the class of persons specified as punishable by such a law. The definition of offenses and the classification of offenders are legislative and not judicial functions, and where, as in the case at bar, a penal statute is plain and unambiguous, the courts may not lawfully extend it to a class of persons who are excluded from its effect by its terms, nor by interpolation or construction after their commission make acts offenses which were not clearly such by the expressed will of the legislative department. The creation of an offense by ex post facto construction is as pernicious as its creation by an ex post facto law. United States v. Wiltberger, 5 Wheat. 76, 96, 5 L. Ed. 37; United States v. Ninety-Nine Diamonds, 72 C. C. A. 9, 12, 13, 139 Fed. 961, 964, 965. 2 L. R. A. (N. S.) 185; United States v. Clayton, Fed. Cas. No. 14,814; In re McDonough (D. C.) 49 Fed. 360; Maxwell v. State, 40 Md. 293; Alexander v. Worthington, 5 Md. 472; Smith v. State, 66 Md. 215, 7 Atl. 49; Tyman v. Walker, 35 Cal. 634, 95 Am. Dec. 152;

Lake County v. Rollins, 130 U. S. 662, 670, 9 Sup. Ct. 651, 32 L. Ed. 1060; Swarts v. Siegel, 54 C. C. A. 399, 117 Fed. 13.

In United States v. Wiltberger, 5 Wheat. 96, 5 L. Ed. 37, Chief Justice Marshall said:

"The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially, in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case, which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated."

[1] There is no ambiguity in the terms of the act under which the plaintiff in error has been fined, there is no uncertainty in the class, or in the ·limits of the class of railroad companies punishable under this law. That class consists of railroad companies "doing business in or through ·any quarantined state or territory," to whom alone notice of the establishment of quarantine and of the rules and ·regulations of the secretary is required to be given by sections 1 and 3, that "shall receive for transportation or transport from any quarantined state or territory, or the District of Columbia, or from the quarantined portion of any state or territory, or the District of Columbia, into any other state or territory, or the District of Columbia, any cattle or live stock, except as hereinafter provided" (section 2), or that shall "move or allow to be moved any cattle or other live stock from any ·quarantined state or territory, or the District of Columbia, or from the quarantined portion of any state or territory, or the District of Columbia, into any other state or territory, or the District of Columbia, in manner or method or under conditions other than those prescribed by the Secretary of Agriculture" (section 4).

The terminal company was not charged in the information filed against it or proved at the trial to have been a member of this class. It owned and operated railroads in the immediate vicinity of the city of St. Louis and performed only the usual functions of a terminal company. The quarantined districts were in the state of Texas. It was not "doing business in or through" any of those districts. It never "received for transportation or transported" any live stock or "moved" any live stock "from any quarantined state" or "the quarantined portion of any state" into any other state or territory in manner or method or under conditions other than those prescribed by the Secretary of Agriculture. If any offense was ever committed under the act of March 3, 1905, in the receipt for transportation, carriage, or movement of the cattle or sheep that the defendant below hauled from St. Louis to Illinois, that offense had been committed and completed long before that company received them, by some earlier carrier that took them for transportation and carried them from the quarantined district in Texas into some other state. There is no provision or permissible construction of the statute under consideration that can add to or include in the class of railroads punishable thereunder transportation companies that receive and carry live stock that

has already been taken out of the quarantined district by other companies in violation of that law.

[3] Counsel say, however, that the Secretary was authorized to make rules and regulations for the inspection, handling, delivery, and shipment of the live stock under section 3 of the act, that he made such regulations for their handling by every railroad company that received them from the time they started out of the quarantined district until they reached their destination, whether those companies received them within and transported them out of the quarantined district or received them after they had been taken out of that district and subsequently transported them, and that the terminal company received this stock at St. Louis and carried them to Illinois on their way from the quarantined district to their destination in Illinois and thus violated the rules. But it is a principle of criminal law that an offense which may be the subject of criminal procedure must be an act committed or omitted, "in violation of a public law either forbidding or commanding it." 4 Blackstone's Comm. 5. The acts charged and proved against the terminal company were not violative of any such law. The Congress did not in fact delegate, and it could not delegate, to the Secretary of Agriculture, or to any other executive officer the power to add to the class of railroad companies or to the acts punishable under this statute such others as in his judgment ought to be punishable thereunder.

[4] A legislative body may delegate the power to find some fact or situation on which the operation of a law is conditioned, or to make and enforce regulations for the execution of a statute according to its terms. Union Bridge Co. v. United States, 204 U. S. 364, 386, 27 Sup. Ct. 367, 51 L. Ed. 523; Marshall Field & Co. v. Clark, 143 U. S. 649, 677, 693, 694, 12 Sup. Ct. 495, 36 L. Ed. 294; Caha v. United States, 152 U. S. 211, 218, 219, 14 Sup. Ct. 513, 38 L. Ed. 415; St. Louis & I. M. Ry. v. Taylor, 210 U. S. 281, 287, 28 Sup. Ct. 616, 52 L. Ed. 1061; Coopersville Co-operative Creamery Co. v. Lemon, 163 Fed. 145, 147, 89 C. C. A. 595.

[5] But it cannot delegate its legislative power, its power to exercise the indispensable discretion to make, to add to, to take from, or to modify the law. "The true distinction," said Judge Ranney for the Supreme Court of Ohio in Cincinnati, Wilmington & Zanesville R. R. Co. v. Commissioners, 1 Ohio St. 77, 88, in a declaration which has been repeatedly approved by the Supreme Court, "is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made." Marshall Field & Co. v. Clark, 143 U. S. 649, 693, 12 Sup. Ct. 495, 36 L. Ed. 294; Union Bridge Co. v. United States, 204 U. S. 364, 382, 27 Sup. Ct. 367. 51 L. Ed. 523; Morrill v. Jones, 106 U. S. 466, 467, 1 Sup. Ct. 423, 27 L. Ed. 267; United States v. Eaton, 144 U. S. 677, 687, 688, 12 Sup. Ct. 764, 36 L. Ed. 591; United States v. Maid (D. C.) 116 Fed. 650; United States v. Blaslingame (D. C.) 116 Fed. 654; United States v. Hoover (D. C.) 133 Fed.

950, 952; United States v. Moody (D. C.) 164 Fed. 269, 271; Locke's Appeal, 72 Pa. 491, 498, 13 Am. Rep. 716.

The attempt of the Secretary of Agriculture to add by his regulations to the class of railroad companies and to the acts punishable under the quarantine act of March 3, 1905, other railroad companies and other acts was unauthorized and ineffective. No offense was charged in the information or proved against the defendant below, the judgment is reversed, and the case is remanded to the court below, with directions to sustain the demurrer to the information and to discharge the terminal company.