### R. J. CRANE v. STATE.

No. A-527.    Opinion Filed May 23, 1911.

(115 Pac. 622.)

1.    ANIMALS — Contagious and Infectious Diseases — Quarantine—
Violation of Quarantine Law—Prosecution—Defenses. A person
on trial charged with having violated a local quarantine, pro-
mulgated by a live stock inspector, is entitled to show as a de-
fense to the charge that he had no knowledge of the existence
of the quarantine, and no information of facts upon which he
could be reasonably presumed to know of the existence of the
same.

2.    ANIMALS—Contagious and Infectious Diseases—Quarantine. (a)
A quarantine promulgated by a local live stock inspector under
the provisions of our statute, in order to be effective, must be
established after an examination and inspection of the premises
quarantined, and upon a finding that the premises are infected
with an infectious or contagious disease of a malignant character.

(b) When such quarantine is so established, notice should
be given to the person in charge of the premises, and to any
others directly affected by the order, and by publication as near
as practicable.

3.    ANIMALS—Contagious and Infectious Diseases — Quarantine —
Violation of Quarantine Law—Prosecution—Defenses. (a) When
a person is on trial charged with having violated the provisions
of a local quarantine, he is entitled to show as a defense that
the facts did not warrant the establishing of the quarantine.

(b) The finding of an inspector to the effect that infectious
or contagious diseases exist and the establishing by him of a
quarantine are not conclusive as against a person charged with
having violated the order.

(Syllabus by the Court.)

*Appeal from Cleveland County Court; N. E. Sharp, Judge.*

R. J. Crane was convicted of violating the quarantine law,
and he appeals. Reversed and remanded.

*A. Hutchin* and *J. B. Dudley,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen.,
and *George G. Graham,* Co. Atty., for the State.

ARMSTRONG, JUDGE. Plaintiff in error was tried at the January, 1909, term of the county court of Cleveland county on a charge of violating the provisions of the quarantine law, and convicted, and his punishment fixed at a fine of $100 and costs.

It appears: That the plaintiff in error was a son of G. M. Crane and lived with his father in Cleveland county. That John Bryant was a neighbor of Crane's and had a pasture in section 1, township 6 north, range 1 west of the I. M., Cleveland county, Okla., and that G. M. Crane had a cow in this pasture. That on the 3d day of September, 1909, one Thornton, a live stock inspector at Lexington, in said county, attempted to quarantine the pasture of Bryant by delivering a written notice of quarantine to said Bryant in Lexington several miles away, and without making any inspection or examination of the premises. Some time during the day G. M. Crane directed his son, the plaintiff in error, to go over to the pasture and get the cow, which he did.

Upon the trial plaintiff in error offered proof tending to show that he had no knowledge of the existence of the quarantine at the time he removed the cow from the pasture. The court refused to admit the testimony on the theory that it was unnecessary to prove knowledge of the existence of the quarantine by the plaintiff in error, but that it was sufficient if the owner of the pasture had been notified. The court, in passing on the objection of the state to this testimony, said:

"It is the ruling of the court that it is not necessary nor the intent of the law to require actual notice to be given to all persons who may have cattle in the pasture that is quarantined; if the man in the possession of the property or premises has reasonable notice from the inspectors, then all other people who might be incidentally affected by the rules would have to take notice of the time the quarantine is established, and in viewing the matter in that light it would, of course, render the question as to what the boy might have said immaterial, in the way of notifying or saying anything to the defendant, or to the owner of the cattle, as to the quarantine."

Testimony was introduced on the part of the state tending to show that the premises quarantined were infected with con-

5 Cr.—36

tagious diseases, and to meet this the plaintiff in error offered proof to the effect that the premises and cattle thereon were not infected with disease. Such testimony on the part of the plaintiff in error was excluded by the trial court on the ground that the findings by the inspector as to these matters were final. Plaintiff in error excepted to these rulings of the trial court. Following this same theory, the court gave the following instructions:

Instruction No. 3:

"You are instructed that it is a violation of law for any person or persons to interfere with an inspector's possession of any premises, which he has declared to be under quarantine, or live stock thereon, or violate any of the rules and regulations made by such inspector of said premises under his possession or control. And if you find from the evidence in this case, beyond a reasonable doubt, that a duly appointed and acting live stock inspector served either written or verbal notice upon one John Bryant, on or about the 3d day of September, 1909, warning and notifying him that any of the live stock or premises in question were infected with any contagious or infectious disease, as charged in the information, of a malignant character, and, if you further find from the evidence beyond a reasonable doubt that the said John Bryant was in lawful possession of said premises at such time, then you are instructed that the removal of any live stock from said premises after such notification to the said Bryant, and before release of such premises, would be a violation of said rules and regulations."

Instruction No. 4:

"You are instructed that a rule or regulation adopted by a live stock inspector, as explained in these instructions, becomes of full force and effect immediately upon the provisions and extent of same being communcated to the person having the lawful possession of any premises and live stock affected by such rules and regulations. And if you find from the evidence, beyond a reasonable doubt, that the premises in question were duly and legally placed under quarantine by a live stock inspector of this state, as alleged in the information, and if you find from the evidence, beyond a reasonable doubt, that the defendant, R. J. Crane, removed a cow from said premises after the said Bryant was so notified, and without the consent of a live stock inspector or before such rules and regulations were modified or abolished, then you should find the defendant guilty."

Instruction No. 6:

"You are instructed that it is not necessary for the state to prove that the defendant had actual knowledge of said premises being under the possession or control of a live stock inspector in order to render said defendant amenable to such rules and regulations; it will be sufficient to render him liable to show by the evidence, beyond a reasonable doubt, that he removed a cow from said premises after the same was legally placed in the possession or control of a live stock inspector, as defined in these instructions."

Plaintiff in error saved exceptions to each of these instructions.

This case appears to have been tried upon an entirely erroneous theory of the law. The rulings of the court in the admission and exclusion of testimony, as well as the instructions given, clearly indicate this.

Section 15, c. 2, art. 1, Snyder's St., 1909, defines the duties of the state board of agriculture, among which is to protect the live stock of the state from infectious and contagious diseases of a malignant character. This board is authorized and empowered to establish, maintain, and enforce such quarantine lines and also the lines established by law, and to make all reasonable and necessary rules and regulations for the enforcement and execution of the same. Section 17 authorizes said board to appoint a sufficient number of live stock inspectors to carry out the provisions of this act, and to enforce the regulations adopted by it relative to animal inspection and quarantine lines. Section 18 defines the authority and powers of the inspectors appointed by the board, and, among other things, provides that they may enter upon any premises or into any barn, shed, pasture, etc., for purposes of inspecting or disinfection, and if upon examination the inspector is satisfied that the premises, barn, shed, etc., is infected with any infectious or contagious disease, of a malignant character or needs disinfecting, he may possess himself thereof, and establish such rules and regulations as he may deem necessary. It further provides that, if any person interferes with the inspector's possession

of said premises or violates any rules made by him, he may be deemed guilty of a misdemeanor.

In order for a person to be liable for prosecution for violations of a local quarantine established by live stock inspectors, they must have knowledge of the existence of such quarantine. We do not think it necessary for personal notice to be served on such person, but he must have such information that he could be reasonably presumed to know of the existence of the same. In the case at bar, however, no valid quarantine existed from the facts disclosed by the record. The live stock inspector was never closer than five miles to the pasture he attempted to quarantine, and the only act he ever did so far as the record shows was to meet Bryant, the owner, in Lexington several miles away and notify him that a quarantine existed. He never went upon the premises and after examination satisfied himself that the pasture was infected with an infectious or contagious disease of a malignant character, or that it needed disinfection. These quarantines, to be upheld, must be established in keeping with the requirements of the statute. Even if the inspector had complied with the statute and made a personal examination of the premises and declared the quarantine in the manner contemplated by law, the plaintiff in error would not be precluded from showing that the facts did not warrant the establishing of a quarantine as a defense to the prosecution. If, as a matter of fact, conditions did not warrant a quarantine, the inspector could have been enjoined from enforcing it; and if the enforcement of the quarantine could have been enjoined, certainly a person could not be held criminally liable for not observing it.

The finding of the inspector to the effect that infectious or contagious diseases exist and the establishing of the quarantine are not conclusive as against a person charged with having violated the order. He may prove on his trial that the facts did not warrant the establishing of such quarantine, and such proof would be a sufficient defense. The instructions of the court, quoted *supra,* are erroneous for the reason that under them a person could be convicted for violating a quarantine without any knowledge whatever of its existence. And for the further reason that they are

predicated on the theory that notice of such quarantine is required to be given only to the person in possession of the premises, and in effect imputes knowledge of the establishment of the quarantine to every one else. And for the further reason that they deprive the defendant of the right to show lack of existence of facts necessary upon which to base a quarantine, as a defense; and, further, the right to show that he had no knowledge of the existence of such quarantine.

Upon the proposition of the necessity of notice, we quote the Supreme Court of South Dakota. In the case of *State v. Butts,* reported in 3 S. D. 577, 54 N. W. 603, 19 L. R. A. 725, that court discusses a proposition identical in principle to the one involved in the case at bar. In that case the superintendent of health promulgated a quarantine against Butts, preventing him from leaving his own residence until further ordered by such superintendent of health. The information charges the violation of this order by Butts by going openly from his house upon the public streets of the town of Miller, etc. He made a motion to dismiss the proceedings on the ground that the information stated no offense which the court had jurisdiction to try. The motion was denied, and he was tried and convicted, and appealed. The Supreme Court, in reversing and dismissing the case, said:

"The openly going from his residence upon the public street did not make plaintiff in error a criminal offender against the quarantine order, unless he knew of its existence. Such an order is unlike a law, knowledge of which is charged against every one. The order might have been duly and properly made, and after it was so made plaintiff in error might have done the very thing which the order prohibited and still be innocent of an offense, unless he knew of such prohibition. * * * All the matters charged in the information might be proved, and yet entirely fail to show the guilt of the plaintiff in error, because his guilt would depend upon his knowledge that the act was prohibited, and therefore wrong. * * * To make it criminal (violation of quarantine regulations) it must be done with a knowledge, either actual or imputed, that it had been authoritatively prohibited."

On the proposition of the effect of the finding of the inspector that the conditions exist justifying the quarantine, the case of

*Richter v. State,* from the Supreme Court of Wyoming, reported in 16 Wyo. 437, 95 Pac. 51, holds, under a statute similar to ours, that the decision of the inspector is not final, and that a prosecution under a section of that statute, which provides that any sheep inspector on finding on examination that sheep are infected with or have been exposed to infectious disease may require that they be kept within certain limits, and that any owner of sheep who breaks quarantine shall be guilty of a misdemeanor, does not preclude the defendant from showing that the necessity of the quarantine did not exist; the question being one of fact for the jury.

On the proposition that the findings of the live stock inspector are not conclusive, the case of *State of Iowa v. S. C. Curby,* reported in 120 Iowa, 26, 94 N. W. 254, while not exactly in point, supports our position.

The case of *Verner v. Bosworth,* reported in 28 Kan. 670, supports our views as herein expressed. In that case the live stock inspector and other officers as provided by the Kansas statute had seized certain property and condemned the same under the quarantine provision. The Supreme Court of Kansas says:

"If upon a judicial hearing it shall be ascertained that the complaint was made without cause, and that the cattle complained of are not within the terms of the statute, the owner thereof would clearly be entitled to have them returned to him; and thus he has his remedy by due course of law, notwithstanding the proceedings in the first instance are *ex parte.* Counsel suggest that the owner of cattle taken up under the provisions of this statute has notice prior to the sale for costs and expenses, and that no other or further notice is necessary or required in order to give him an opportunity to have his rights adjudged. This notice comes too late to benefit the owner in contesting the complaint, if the report of the inspectors and the order of the justice of the peace are conclusive."

The case of *Wilcox v. Johnson,* reported in 34 Kan. 658, 9 Pac. 610, holds that the actions of the quarantine officer, justice of the peace, and sheriff, respectively, are not conclusive against the owner of the cattle seized under the statute, and that the owner may have his action of replevin showing that the cattle are not diseased within the meaning of the law.

For errors in excluding the testimony referred to, and in giving the instructions quoted, the judgment of the trial court is reversed, and this cause remanded.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.