### LYNCH v. TILDEN PRODUCE CO.*

(Circuit Court of Appeals, Eighth Circuit. July 29, 1922. Rehearing Denied September 14, 1922.)

No. 6026.

1. **Internal revenue ⊗⟐16—Butter manufacturer, taxed as manufacturer of adulterated butter, had burden of proving that it did not use any process or material with intent to cause butter to absorb abnormal quantities of water, milk, or cream.**

In suit to recover stamp taxes assessed against plaintiff on the ground that it was a manufacturer of adulterated butter, within Act May 9, 1902, § 4 (Comp. St. § 6233), defining "adulterated butter" as butter in the manufacture or manipulation of which any process or material is used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream, and Regulation No. 9, promulgated July 2, 1907, declaring 16 per cent. or more of moisture an abnormal quantity thereof within such definition, in which there was evidence that the butter manufactured by plaintiff contained more than 16 per cent. of moisture, the plaintiff had the burden of proving that it had not used any process or material in the manufacture of the butter with the intent or effect to cause the butter to absorb an abnormal quantity of water, milk, or cream.

2. **Internal revenue ⊗⟐16—Butter containing more than 16 per cent. of moisture not "adulterated," within statute, unless process or material was used with the "intent" of causing the butter to absorb abnormal quantities of moisture; "effect."**

Under Act May 9, 1902, § 4 (Comp. St. §§ 6233, 6237), imposing a tax on the manufacturer of adulterated butter, and defining such butter as "butter in the manufacture or manipulation of which any process or material is used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream," and Regulation No. 9, promulgated July 2, 1907, declaring that butter having 16 per cent. or more of moisture contains an abnormal quantity thereof within such definition, the mere fact that butter contains more than 16 per cent. of moisture is not in itself sufficient to make such butter adulterated butter within the statute, notwithstanding such regulations, but a process or material must have been used with the intent or effect to cause the absorption of abnormal quantities of water, milk, or cream; the words "intent" and "effect," within the statute, having practically the same meaning.

[Ed. Note.—For other definitions, see Words and Phrases; First and Second Series, Adulterate—Adulteration; Effect; Intent.]

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit by the Tilden Produce Company against Margaret C. Lynch, executrix of the last will and testament of E. J. Lynch, deceased. Judgment for plaintiff, and defendant brings error. Affirmed.

Alfred Jaques, U. S. Atty., of Duluth, Minn., and Miles J. Purcell, Solicitor of Internal Revenue, of Saginaw, Mich. (Carl A. Mapes, Solicitor of Internal Revenue, and Malcolm A. Coles, Sp. Atty. Bureau

of Internal Revenue, both of Washington, D. C., on the brief), for plaintiff in error.

George W. Peterson, of St. Paul, Minn. (Moore, Oppenheimer, Peterson & Dickson, of St. Paul, Minn., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and TRIEBER and MUNGER, District Judges.

CARLAND, Circuit Judge. In this case the parties will be known as they were in the trial court. The plaintiff brought suit against defendant to recover certain stamp taxes paid under protest and assessed against it on the ground that it was a manufacturer of adulterated butter, within the meaning of the Act of Congress of May 9, 1902 (32 Stat. 193–195), and Regulation No. 9, promulgated July 2, 1907. On motion of counsel for plaintiff, the trial court directed a verdict in its favor. Defendant has brought the case here, assigning this ruling as error.

The statute (Comp. St. § 6233) defines one class of adulterated butter as follows:

"Or any butter in the manufacture or manipulation of which any process or material is used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream."

Regulation No. 9 reads as follows:

"The definition of adulterated butter as contained in the act of May 9, 1902, embraces butter in the manufacture of which any process or material is used whereby the product is made to 'contain abnormal quantities of water, milk or cream,' but the normal content of moisture permissible is not fixed by the act. This being the case it becomes necessary to adopt a standard for moisture in butter, which shall in effect represent the normal quantity. It is therefore held that butter having 16 per cent. or more of moisture contains an abnormal quantity and is classed as adulterated butter."

It will be noticed that the statute provides that the process or material must be used with intent or effect of causing the "absorption" of abnormal quantities of water, milk, or cream. The regulation, in an attempt to construe this definition, declares that adulterated butter, as defined in the statute quoted, embraces butter in the manufacture of which any process or material is used whereby the "product is made to contain" abnormal quantities of water, milk, or cream. So far as the regulation differs from the statute, we must, of course, follow the latter.

The testimony taken at the trial showed that in August and September, 1918, plaintiff manufactured in its plant in St. Paul, Minn., 350 tubs of creamery butter in the usual way and shipped the same to the Chicago Cold Storage Company, Chicago, Ill. on September 28, 1918, where the butter was placed in storage. The officials of the Department of Internal Revenue, upon tests of samples taken severally from the 350 tubs of butter so consigned, found that samples from 156 tubs contained moisture amounting to 16 per cent. or more. The average moisture content in the 156 samples so tested was 16.76 per cent. The testimony further showed that, when this butter was manu-

factured by the plaintiff, it was tested for its moisture content, and that these tests showed that the butter contained in the 350 tubs showed a moisture content ranging from 15 per cent. to 16 per cent. The butter contained in the 156 tubs was seized by the Internal Revenue Department as adulterated butter, for the reason that the moisture content in the samples equaled or exceeded 16 per cent., in violation of Regulation No. 9 above quoted. A stamp tax of 10 cents per pound, amounting to $936, was imposed by the Revenue Department, which plaintiff paid under protest. The usual application for a refund was made, and upon denial of the application this suit was commenced. The case of United States v. 11,150 Pounds of Butter, 195 Fed. 657, 115 C. C. A. 463, was an information by the United States to forfeit 11,150 pounds of butter claimed by the Milton Dairy Company. The trial court had dismissed the information. 188 Fed. 157. This court, in affirming the judgment of dismissal, used the following language, which was concurred in by all the judges who sat in the case.

"Hence the burden was upon the libelant in this case to prove: (1) That such a process or such material was used in the manufacture or manipulation of the butter here in controversy; and (2) that it was used with the intent or the effect of causing the butter to absorb abnormal quantities of water, milk, or cream. The libelant produced no evidence to support these propositions, which it alleged in its pleading as the basis of its cause of action. The fact that the butter contained more than 16 per cent., or an abnormal quantity, of moisture, was insufficient to sustain either of them. The regulation of the Secretary in no way relieved the government of the necessity of proving these allegations. The plain purpose and only effect of that regulation was merely to define and fix the measure of an abnormal quantity of moisture in butter under the statute at 16 per cent. or more of the product. It was not the purpose of the Secretary, and it could not have been the effect of his regulation, to repeal or amend the portion of the clause in section 4 of the act of 1902 italicized in the last quotation, to enact the word 'containing' in its place, and thereby to add other classes of butter to those denounced as adulterated butter by the law, and other classes of manufacturers to those subject by the act of Congress to its drastic penalties. United States v. Wiltberger, 5 Wheat. 76, 96, 5 L. Ed. 37; United States v. Ninety-Nine Diamonds, 139 Fed. 961, 964, 965, 72 C. C. A. 9, 12, 13, 2 L. R. A. (N. S.) 185; St. Louis Merchants' Bridge Terminal Ry. Co. v. United States, 188 Fed. 191, 193, 110 C. C. A. 63. The result is that the evidence in this case was insufficient to warrant a verdict for the government, and for that reason there was no error in the dismissal of the suit."

[1, 2] The plaintiff in this case had the burden of showing that it did not do the things which the court held in the case cited was necessary for the libelant to show that the Milton Dairy Company did, and we are of the opinion that such burden was fully met, as, after a careful reading of the evidence, we cannot find any evidence that would be sufficient to sustain a verdict that a process or material was used by plaintiff in the manufacture or manipulation of the butter in question with intent or effect of causing such butter to absorb abnormal quantities of water, milk, or cream. The mere fact that an average of 16.76 per cent. of moisture was found in the butter, standing alone, would not show a violation of the statute, as decided in the case above mentioned, in view of the fact that the process of making butter, speaking generally, consists in the elimination of moisture from cream or

milk, which moisture averages in milk from 86½ per cent. to 87 per cent. and in cream is about 65 per cent.

The evidence shows that, after the butter fat is, by the process of churning, separated from the buttermilk, it is washed with water for the purpose of eliminating any buttermilk still in the butter fat. This is the universal practice, and as the evidence shows is necessary; but, if we concede the moisture found in the butter in question came from this source, there is no evidence that the plaintiff used the water with intent or effect to cause the butter to absorb an abnormal quantity of water. The law says that the process or material must be used with the intent or effect. We know the meaning of the word "intent," but the word "effect," following the word "intent," does not mean that, if you find an abnormal quantity of moisture in butter, you may assume without evidence that the manufacturer used a process or material with the intent or effect of causing the butter to absorb abnormal quantities of water, milk, or cream. Whatever is effected is the consequence of a specific design. It always requires, therefore, a rational agent to effect anything. So that the words "intent" and "effect," as used in the statute, mean practically the same thing.

We find it unnecessary, in our view of the evidence, to determine whether Regulation No. 9 is valid or not, for the reason that, conceding it to be valid so far as creating a standard is concerned, there is no evidence in the record that the average moisture found in the butter got there by the intentional or effective use of a process or material by plaintiff which caused the butter to absorb such moisture. The views above expressed render it unnecessary to consider other assignments of error.

Judgment below affirmed.