No. 60,159

STATE OF KANSAS, *Appellant,* v. NORTH CENTRAL KANSAS PRODUCTION CREDIT ASSOCIATION, *Appellee.*

(740 P.2d 87)

Opinion filed July 17, 1987.

*Gerald R. Kuckelman,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Mark J. Noah,* of Noah & Harrison, P.A., of Beloit, argued the cause, and *Don W. Noah,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.: This is an appeal by the State in a criminal action in which the defendant, North Central Kansas Production Credit Association (PCA), was charged with a violation of a quarantine order issued by the Kansas Livestock Commissioner (K.S.A. 47-624).

The trial court dismissed the complaint on motion of the defendant on the basis that the defendant had insufficient notice of the quarantine order. The State appealed from the dismissal of the complaint.

For purposes of this appeal, the facts in the case are not in dispute and essentially are as follows: On October 11, 1985, the Kansas Livestock Commissioner established a quarantine on the farm of Dennis Hansen in Republic County, Kansas, pursuant to K.S.A. 47-611. The quarantine was based on a laboratory report indicating the presence of pseudorabies in Hansen's hog operation. The livestock commissioner notified Hansen of the quarantine by a letter which enclosed an official quarantine, No. 35500, and which outlined procedures for complying with the

quarantine and for a release therefrom. No letter of quarantine was sent to PCA, nor were notices of the quarantine posted on the Hansen premises or published in a newspaper or in the Kansas Register.

On February 21, 1986, the district court of Republic County, in a civil action, ordered delivery of all the Hansen property, including the hogs, to the sheriff to satisfy a judgment obtained by PCA in a foreclosure action. On February 22, 1986, the hogs were removed from Hansen's farm to another location pursuant to the district court order.

On April 15, 1986, the county attorney filed a complaint charging PCA with violating the quarantine under K.S.A. 47-624. Thereafter, PCA filed a motion to dismiss on the basis that the notice of quarantine given by the livestock commissioner was insufficient to give notice to defendant PCA regarding the quarantine. It was the position of defendant that the letter/notice to Dennis Hansen was insufficient to give notice of the quarantine to any person other than Hansen, because notice of the quarantine had not otherwise been published or otherwise circulated. It was the position of the prosecutor that, while the officers of PCA did not receive an official notice of the quarantine from the livestock commissioner, they had actual knowledge of the quarantine which they had obtained from area residents and local veterinarians.

The district court sustained defendant's motion to dismiss, holding that, although the notice by letter to Dennis Hansen satisfied the requirements of notice under K.S.A. 47-611, such notice, having not been officially published or otherwise circulated, did not have the effect of according a general notice of the quarantine to any person other than Hansen. The district court held that, for a person to be guilty of a violation of a quarantine, he must have either actual knowledge by service of a notice by the commissioner or constructive knowledge from publication of a governor's proclamation. Thus, the court reasoned that defendant PCA had received insufficient notice of the order of the livestock commissioner to be guilty of a violation of the quarantine. The State appealed the order of dismissal.

The basic issue presented to the court on appeal is whether actual knowledge by PCA of the quarantine order was sufficient

for the defendant to be prosecuted under K.S.A. 47-624. At the outset, it would be helpful to examine the applicable Kansas statutes. K.S.A. 75-1901 provides for the appointment of a live-stock commissioner (also known as the livestock sanitary commissioner) by the Kansas animal health board. The commissioner serves as executive officer of the Kansas animal health department. Among other duties prescribed by statute, K.S.A. 47-610 requires the commissioner to protect the health of domestic animals of the state from contagious or infectious diseases and he is authorized and empowered to establish, maintain, and enforce a quarantine to prevent the spreading among domestic animals of any contagious or infectious disease. K.S.A. 47-607d authorizes the commissioner to adopt such rules and regulations as he may deem necessary to carry out the purposes of the act.

K.S.A. 47-611 governs the procedure to be followed where a quarantine is to be issued:

"**47-611. Quarantine, sanitary and other regulations; notice of quarantine; proclamation by governor; enforcement.** When the commissioner shall have determined the neeessity of a quarantine and other regulations to prevent the spread among domestic animals of any contagious or infectious disease the commissioner shall notify the governor thereof, who shall issue a proclamation announcing the boundary of such quarantine and the orders, rules and regulations prescribed by the commissioner which proclamation shall be published in the Kansas register, except that the commissioner may, if the area affected by the quarantine is limited in extent, dispense with the proclamation of the governor, and give such notice as the commissioner shall deem sufficient to make the quarantine effective. The commissioner shall establish such quarantine forthwith and shall give and enforce such directions, rules, and regulations as to separating, isolating, handling, and treating, feeding and caring for such diseased animals, animals exposed to the disease, and animals within the quarantine which have not been immediately exposed, as the commissioner shall deem necessary to prevent those classes of animals from coming into contact with one another; and the livestock sanitary commissioner is hereby authorized and empowered to enter any grounds and premises to carry out the provisions of this act."

K.S.A. 47-604 provides a penalty for violating a quarantine:

"**47-604. Penalty for violating act or quarantine.** Except as otherwise provided in this act, any person who shall violate, disregard, or evade, or attempt to violate, disregard, or evade, any of the provisions of this act, or who shall violate, disregard, or evade, or attempt to violate, disregard, or evade, any of the rules, regulations, orders or directions of the livestock sanitary commissioner establishing and governing quarantine, shall be deemed guilty of a misdemeanor, and

upon conviction thereof shall be fined in any sum not less than one hundred nor more than five thousand dollars."

K.S.A. 47-624 is the statute under which PCA was prosecuted. It provides as follows:

"**47-624. Penalty for certain unlawful acts.** That any person who shall have in his possession any *domestic animal affected with any contagious or infectious disease, knowing such animal to be so affected,* who shall permit such animal to run at large; or who shall keep such animal where other domestic animals, not affected with or previously exposed to such disease, may be exposed to such contagious or infectious disease, or shall sell, ship, drive, trade or give away such diseased and infected animal or animals which have been exposed to such infection or contagion; except by sale, trade, or gift to a regularly licensed disposal plant; or shall move or drive any domestic animal in violation of the rules, regulations, directions or orders establishing and regulating quarantine, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than one hundred nor more than five hundred dollars for each such diseased or exposed animal which he shall permit to run at large, or keep, or sell, ship, drive, or trade or give away, in violation of the provisions of this act: *Provided,* That any owner of any domestic animal which has been affected with or exposed to any contagious or infectious disease may dispose of the same after he obtains from the livestock sanitary commissioner a bill of health for such animal." (Emphasis supplied.)

In determining the issue raised in this case, we should consider all of these statutes together to determine the legislative intent. In *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P.2d 537 (1957), the court emphasized the importance of public health statutes. The court stated:

"Among all the objects sought to be secured by government, none is more important than the preservation of the public health; and, an imperative obligation rests upon the state through its proper instrumentalities or agencies to take all necessary steps to accomplish this objective (25 Am. Jur. Health, p. 287, § 3). Statutes enacted for this purpose should be liberally construed and the most extensive power may be conferred on administrative boards, either state or local, to carry out such purpose (39 C.J.S. Health, pp. 811, 813, § 2)." p. 665.

Courts of other states have recognized the importance of quarantine regulations. In *State v. McCarty,* 5 Ala. App. 212, 59 So. 543 (1912), the court stated:

"Quarantine regulations affect the state in its most vital spot—the health of its people, or, as in this case, the health of its live stock—and it is essential that, in construing statutes passed for the purpose of promoting such delicate and important subjects, great latitude should be allowed the Legislature in determining the character of such laws, and how, when, and by whom, in their practical administration, they should be applied.—*Blue v. Beach,* 155 Ind. 121,

56 N.E. 89, 50 L.R.A. 64, 80 Am. St. Rep. 159; *Union Bridge Co. v. U. S.*, 204 U.S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; *St. Louis Merchants' Bridge Terminal Co. v. U. S.*, 188 Fed. 191, 110 C.C.A. 63." pp. 225-26.

The defendant was charged in this case with a violation of K.S.A. 47-624. It should be noted that, under K.S.A. 47-624, any person who shall have in his possession any domestic animal affected with any contagious or infectious disease, *knowing such animal to be so affected,* who shall permit such animal to run at large or who shall keep such animal where other domestic animals may be exposed to such infectious disease shall be deemed guilty of a misdemeanor. This section of K.S.A. 47-624 is applicable where a person has actual knowledge that the animal is affected with a disease. There is no requirement that a quarantine order have been previously issued by the livestock commissioner. Later in K.S.A. 47-624, it is provided that any person who shall move or drive any domestic animal in violation of the rules and regulations establishing quarantine shall be deemed guilty of a misdemeanor. It is this portion of K.S.A. 47-624 which is the basis for the prosecution of PCA in the case now before us.

It should be noted that K.S.A. 47-611 authorizes the livestock commissioner, after the necessity of a quarantine has been determined, to notify the governor thereof, who shall issue a proclamation establishing the boundaries of the quarantine, which proclamation shall be published in the Kansas Register. A notice to the governor is not required in all cases; however, K.S.A. 47-611 does not require a notice to the governor or a proclamation to be published if the area affected by the quarantine is limited in extent, in which case the commissioner may dispense with the proclamation of the governor, and give such notice as the commissioner shall deem sufficient to make the quarantine effective. From the reading of these various statutes together, it is clear that K.S.A. 47-624 is violated where a person who has actual knowledge that an animal is affected with any contagious or infectious disease permits the animal to be moved or driven in such way as to expose other animals to the disease in violation of a quarantine issued by the livestock commissioner.

We have concluded that the trial court erred in dismissing the complaint for the stated reason PCA did not have notice of the quarantine order through service of the notice by the commis-

sioner or by publication in the Kansas Register. We hold that, if PCA had actual knowledge of the quarantine order obtained from persons or veterinarians in the area, that would be sufficient for the defendant to be prosecuted under K.S.A. 47-624.

This holding is consistent with the conclusion reached by appellate courts of other states where the issue has arisen. We note in particular *State v. Butts*, 3 S.D. 577, 54 N.W. 603 (1893), which involved a criminal prosecution for a violation of a quarantine order of the county superintendent of health. That case did not involve diseased livestock but concerned an individual citizen who was afflicted with diphtheria, a contagious and infectious disease, who left his place of residence in violation of a quarantine order. The court in *Butts* made it clear that openly going from his residence onto the public streets did not make him a criminal offender against the quarantine order, unless he knew of its existence. The court observed that such an order is unlike law, knowledge of which is charged against every one. The court noted that it was not alleged in the complaint that the order was served upon him, or that it was brought to his attention directly or indirectly. The court stated that to make his act criminal, it must be done with the knowledge, either actual or imputed, that it has been authoritatively forbidden, and there was nothing in the information showing any such knowledge upon the part of the defendant or any facts from which knowledge might be inferred. Clearly the court in *Butts* recognized that, if the defendant had had actual knowledge of the quarantine order, he could have been prosecuted for violation of the quarantine.

There is also a decision of the Criminal Court of Appeals of Oklahoma which, in our judgment, is exactly in point. I refer to *Crane v. State*, 5 Okla. Crim. 560, 115 Pac. 622 (1911). In *Crane*, the court held that a person on trial charged with having violated a local quarantine, promulgated by a livestock inspector, is entitled to show as a defense to the charge that he had no knowledge of the existence of the quarantine and no information or facts upon which he could be reasonably presumed to know of the existence of the same. The court stated as follows:

"In order for a person to be liable for prosecution for violations of a local quarantine established by live stock inspectors, they must have knowledge of the

existence of such quarantine. We do not think it necessary for personal notice to be served on such person, but he must have such information that he could be reasonably presumed to know of the existence of the same." p. 564.

We have not been able to find any other cases directly in point, nor have any other cases been called to our attention by counsel for the parties. The sole issue presented on the appeal is one of law. The facts in this case have not yet been fully developed. It is our holding on this appeal that, if the State has evidence to prove that the defendant had actual knowledge of the quarantine order and that the defendant violated the quarantine order, that evidence would be sufficient for the defendant to be convicted under K.S.A. 47-624, even though the defendant was not served with any official notice of the quarantine, and even though there had been no governor's proclamation of the quarantine or any publication in a newspaper or in the Kansas Register.

The judgment of the district court is reversed and the case is remanded for further proceedings.