# Spraggins, *et al. v.* State, *ex rel.* Jefferson County.

## *Mandamus.*

### (Decided June 30, 1913. 63 South. 83.)

1. *Highways; State Commission; Statute; Construction.*—Acts 1911, p. 223, is entitled to a liberal construction so as to give effect to the purposes of the legislature to afford state aid and supervision in the construction and maintenance of roads which received state aid.

2. *Same; State Aid for County Roads.*—Under section 6, Acts 1911, p. 223, no county is entitled to receive from the state more than one-half of the cost of any road.

3. *Same.*—Under sections 9 and 10 of said Act, if the money is not actually expended or the work actually performed within the time prescribed a mere contract for the work to be done will not constitute a use of the money within the time limited, unless said contract

and contractor's bond for a road actually begun were approved by the Commission with the understanding that the contract should constitute a use of the money agreed to be paid thereunder.

4. *Same; Rules and Regulations.*—Where a county entered into a contract late in 1912, for the construction of a road, and the contractor's bond was approved by the State Highway Commission, but approved only for the expenditure of the 1912 apportionment, the limitation imposed by the Commission was reasonable, and was a valid exercise of the power to make rules and regulations conferred upon it by Acts 1911, p. 223.

5. *Same.*—The facts examined and it is held that the county was entitled to one-half of the money expended in 1912 from the apportionment made to it in 1911, all of the 1912 apportionment and the balance of one-half of the total cost from the 1913 apportionment.

6. *Pleading; Demurrer; Admission.*—The allegation in an answer that a county road contractor's bond was only approved by the State Highway Commission for the state funds apportioned to that county for the year 1912 must be treated as true on demurrer to such answer.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Mandamus by the State, on the relation of Jefferson County, against R. E. Spraggins and others, to compel respondents, as members of the State Highway Commission, to secure payment to the relator of the sums appropriated to its use out of the State Highway Improvement fund in the years 1911 and 1912. From a judgment for the relator, the respondents appeal. Reversed and remanded.

R. C. BRICKELL, Attorney General, for the State. Under section 10 of Acts 1911, p. 223, the petition in this case shows that the monies apportioned for 1911, to Jefferson County by the State Highway Commission, has not been used within the time limit, and all unexpended balances reverted to the general road fund to be again subdivided among all the other counties in the state.— *Park v. Candler,* 39 S. E. 89.

W. K. TERRY, for appellee. Appellee contends that under the Act the use of the money had been contracted

for properly under the statute, and that, therefore, the appropriation became due and payable.—17 S. W. 150; Acts 1911, p. 223.

DE GRAFFENRIED, J.—In the latter part of the year 1912 the board of revenue of Jefferson county entered into a contract with Wallace Bros. & Young, whereby said Wallace Bros. & Young obligated themselves to construct a public road in accordance with certain plans and specifications, and which is known as the "Stouts Mountain Road." The road was to be three miles in length, and its total cost was to be $6,711.92. Wallace Bros. & Young were required to make, as a part of their contract, a bond in the sum of $10,000 "for the faithful performance of their contract."

By an act approved April 5, 1911, the "state highway commission" was created, and its powers defined. Of course, the act is to receive that construction at the hands of the courts which will carry into effect the legislative purpose which called it into existence. The true purpose of the act is expressed in that part of its title which says that it was enacted "to give state aid and state supervision over all public roads, culverts and bridges of the state for construction of a permanent nature and the maintenance thereof wherein any portion of the" funds of the state is "used for such purpose." It is manifest that the Legislature intended, when it passed the act, to foster and encourage road building in Alabama, to provide a method whereby public roads shall be skillfully and intelligently constructed and maintained, and to protect the counties and people of the state from losses necessarily entailed in building roads unskillfully and in ignorance of scientific methods. For this reason, section 7 of the act (see Pamph. Gen. Acts 1911, p. 223) provides: "That as soon as practicable

the highway commission shall prepare and adopt such rules and regulations for the construction, improvement and maintenance of public roads, culverts and bridges as they shall deem most suitable for the requirements of and bring the most practical results to the several counties of the state. Such rules and regulations shall be printed and several copies shall be forwarded to the probate judge and county commissioners or boards of revenue in the state for general distribution. Such rules and regulations may be amended from time to time, but such amendments must be printed and distributed not later than March 1st of each year."

1. It is, however, the evident purpose of the Legislature that no county shall receive, as aid to it in the construction of any public road, from the state money in excess of one-half of the cost of such road. This is rendered certain by section 6 of the act, which provides as follows: "No money shall be drawn from the state road fund by any county until the said county shall have appropriated and rendered available a sum of money equal in amount to the sum to be drawn from the state road fund."

2. It is also clear that the state intends—in order that a stimulus may be applied to counties in the matter of road building under the act—that no county shall receive any part of the fund which is appropriated to its use for *one* year, unless that fund is used by the county by the *end* of the *next succeeding* year. This is evident from the language of section 10 of the act, which provides as follows: "That on or before the first day of February of each year every county treasurer or other proper authority shall certify to the state highway commission the amount of money expended for all purposes in road construction and maintenance and for bridges in his county during the preceding year. On or before the

first of February of each year, the highway commission shall notify the probate judge of each county of the amount of money available that may be expended on public roads in said county during such year. Should any portion of the money be appropriated for the benefit of any county not be *used* by said county during the current year for which the same was appropriated, such sum of money shall remain in the state treasury for the *future use and benefit* of said county, provided that all sums of money so appropriated and not *used* by any such county for a period of two years, shall revert to and become a part of the general fund for the improvement of the state highways of Alabama, and shall be in addition to the annual appropriation made therefor."

The language of the above-quoted section 10 must be read in connection with the language of that part of section 9 of the act which is as follows: "Where any work is done by contract the state highway commission shall require a bond of the contractor for the faithful performance of the work, the amount of the bond to be double the contract price and to be approved by the members of the commission. The highway engineer may authorize partial payments to any contractor performing any highway or bridge improvement, under the provisions of this act as the same progresses. The progress estimates shall be based upon materials in place and labor expended thereon, but not more than eighty-five per cent. of the contract price of the work as it is completed shall be paid in advance of the full completion and acceptance of such improvement. At least fifteen per cent. of the full contract price of any such work or improvement shall be withheld until the work is satisfactorily completed and accepted by the state highway engineer. Provided, however, that in cases of emergency where it is necessary for the court of county commissioners or

boards of revenue or other proper authorities in the county to make repairs on bridges or highways before they can confer with the state highway commission they shall be authorized to do said work without waiting to consult with the state highway commission."

When so read, we think that, unless there is *"a bond of the contractor"* which is *"approved by the members of the commission,"* no money can be held to have been used by a county in *any one year* which is not represented by material actually supplied or work actually done on the state aid road during that year. Of course, if a mile of the road has in *fact* been built during a particular year, then the money for building the road has actually been used by the county, within the meaning of the act, during that year, although no money has actually been paid out by the county for the mile of road so built. The work is there in the road to show for the money, and it does not matter to the state whether the debt thereby created has been paid or not. When, however, the building of a state aid road is actually *begun* in a given year, under a *contract taken and approved by the state highway commission,* then it was the manifest purpose of the Legislature to declare that the contract shall determine what amount, in each year, the county is to be held to have used. In the instant case the contract is not before us, and we do not know its terms. We find, however, in the answer of the state highway commission, the following: "Respondents say that the contract for the work to be done on the roads of Jefferson county, as set forth in petition, was not approved by respondents, nor was the bond of the contractor approved by them, as required by section 9 of the act creating the state highway commission, until the 16th day of December, 1912, and was then only approved by them for the expenditure of the state funds appropriated for the year 1912."

It is evident from the language of the above-quoted subdivision 9 of the act, which provides that "where any work is done by contract the state highway commission shall require a bond of the contractor for the faithful performance of the work, the amount of the bond to be double the contract price and to be approved by the members of the commission," that it is not contemplated by the act that a county, by creating a *contractual liability merely,* in one year can be held to have used, within the meaning of the act, funds appropriated for a *previous* year, unless the state highway commission expressly or impliedly *consents* thereto. In fact, the act, in section 6, provides that "no money *shall* be drawn from the state road fund by any county until the said county shall have appropriated and rendered available a sum of money equal in amount to the sum to be drawn from the state road fund," and subdivision 14 of the act provides that "in no instance shall the amount authorized to be paid out of the state treasury *exceed* that which may for the same purpose *be paid out* of the treasury of the county in which such contract is made." It is thus the purpose of the act to declare that for each dollar which a county draws from the state for a state aid road the county must show that it has expended a dollar on that same road. If it calls on the state for aid for a road which has not been completed, but which rests merely in *contract,* then it must show that the contract was approved by the state highway commission, with the express or implied understanding, on the part of the commission, that the liability incurred by the contract would be accepted by the commission as a *use* of the money contracted to be paid for such road by the county. This conclusion follows not only from the provisions of the act which we have already quoted, but also from the following provision in section 14 of the act,

viz.: "The said state highway commission is hereby authorized and empowered to make all such rules and regulations as are necessary and needful looking to the *speedy* completion of *all* contracts and they may authorize the payment of such sum of money as in their judgment is necessary for such purpose before the completion of any contract, but in no instance shall the amount authorized to be paid out of the state treasury exceed that which may, for the same purpose, be paid out of the treasury of the county in which such contract is made."

3. As it is the purpose of the act to require that every dollar of the state's money which is appropriated for the use of a county shall *speedily* find its way into its equivalent in a public road of that county, and that any money which is so appropriated, which is not *used* by the county for which it was appropriated within the *year succeeding* such appropriation, "shall revert to and become a part of the general fund for the improvement of the state highways of Alabama," we think it evident that Jefferson county was not authorized to defeat the last-quoted provision of the act, in so far as the appropriation for 1911 is concerned, simply by letting a contract in the latter part of 1912 for the building of a road which could not have been completed in the year 1912 in the absence of an agreement, express or implied, on the part of the state highway commission, that the *contractual liability* thereby created would be accepted by the commission as an actual use of the money appropriated for 1911 for the stated purpose. The mere appropriation by Jefferson county of the sum of $4,000 to be used in constructing said road was not *alone* sufficient to authorize it to demand of the state highway commission the appropriation of $2,000 for the year 1911 and the sum of $2,000 for the year 1912. It had, under the terms of the act, to go further than this. It had to show that

it had actually built a road of the value of $8,000 during said years, or that, with the consent of the highway commission, it had actually bound itself to pay $8,000 in the near future for the building of the road, and that when it so bound itself the appropriation for 1911—the year *previous* to the making of the contract, and the year previous to beginning the building of the road—was understood between the county and the state highway commission to have been set apart to the particular improvement, and thereby, in the broad sense of the word *use,* to have been actually used by the county. It was not the purpose of the Legislature to permit a laggard county, for the use of which money had been appropriated in *one* year by simply making a contract some time during the *next succeeding* year, to thereby place itself on the same footing and entitle itself to the same consideration and treatment as a diligent county which, by actual *road building,* and by the actual expenditure of its own money during the period named by the act, had indicated not only its technical legal, but its high moral, right to the money which had been appropriated by the state for its use and benefit. The prize is for the diligent, and it is but right that, if a county is in fact unable or unwilling to avail itself, within the terms of the act, of the state's money offered each year to each county as a reward for diligence and efficiency in public road building, such money so appropriated for the use of such county shall go back into the "general fund for the improvement of the state highway of Alabama." The act under consideration is a stimulus to intelligent public road building in Alabama. It should, as we have already said, receive a liberal construction in order that it may accomplish the ends for which it was designed; but it must not be construed so liberally in the interest of counties which are unable to bring themselves within its

terms as to defeat the real purpose of the legislators who placed it among our statutes.

4. It seems that in the year 1911 there was appropriated for the use of Jefferson county, out of the fund for the improvement of the state highways, the sum of $2,000. Under the terms of the act Jefferson county had, until January 1, 1913, the right to the use of this fund for the purpose of building, under the terms of the act, a state aid road. In the year 1912 a like sum was appropriated for the use of the county, and the county has, until January 1, 1914, the right to use said sum for the indicated purpose under the terms of the act. In August, 1912, the county of Jefferson took up with the state highway commission the building of the road to which we have above referred. The commission agreed to the construction of the road, and the engineer of the commission approved the plans and specifications of said road on August 26, 1912. The county of Jefferson thereupon, on the 24th day of October, 1912, made a contract, to which we have already referred, with Wallace Bros. & Young for the construction of said road, and in the contract agreed to pay him $6,711.92 therefor.

This contract, however, was not approved by the state highway commission until the *16th day of December, 1912,* and then *only* "for the expenditure of the state's funds appropriated for the year 1912." We know this because the answer of the commission to the petition in this case says so, and the court sustained a demurrer to that answer. We must, therefore, treat that statement in the answer as true.

The contract, *therefore,* cannot be invoked as creating a just claim against the state aid fund, by virtue of the *contractual liability thereby created,* until its approval on December 16, 1912. Taking into consideration the

fact that the act under discussion is an act which can only be given effect through a commission appointed for the purpose, and that therefore it was essential that, in its administration, the state highway commission should be vested with the exercise of a reasonable discretion as to the manner in which and the time when the money which the law places under their control shall be made subject to the call of the counties entitled to it, we are of opinion that the limitation which the commission placed upon the contract, viz., that the *liability* which Jefferson county assumed in making the contract, should not entitle the county, by virtue of that *liability merely,* to claim that the $2,000, which had been appropriated for the use of that county for the year 1911, had been *used* by the county during the year 1912, the year in which the contract was made.

Modern conditions require that many of our laws shall find practical administration through commissions raised for that purpose, and courts should uphold all of their reasonable rules, regulations, and orders, when they are made in good faith for the purpose of giving wise effect to the laws which they are required to administer.—*Railroad Commission of Ala. v. Northern Alabama Ry. Co.,* 182 Ala. 357, 62 South. 749; *Whaley v. State,* 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499; *State v. McCarty,* 5 Ala. App. 212, 59 South. 543. We are therefore of the opinion that the county of Jefferson, if the answer of the state highway commission is true, is not entitled to have the $2,000, which was appropriated to its use in 1911, paid over to it.

5. It appears, however, that Jefferson county, within the meaning of the act, expended the sum of $2,000 upon the state aid road in 1912. It had, under the terms of the act, until January 1, 1913, within which to expend the $2,000, which was appropriated to it for road pur-

poses in 1911. As it spent $2,000 on the road, it is entitled to demand and receive of the state highway commission, out of 1911 appropriation one-half of the sum so expended, viz., $1,000. The building of the road was agreed to by the commission and, under the letter of the act, as the work had been done before the bond was formally approved by the commission in December, 1912, Jefferson county is entitled to said sum of $1,000 out of said appropriation for 1911. It is, of course, entitled to all of the appropriation for the year 1912, and to a further sum out of any money appropriated to it for 1913, which will bring to the county, out of the state highway fund—if there has been an appropriation for 1913—one-half of the sum which it has obligated itself to pay for said road, viz.: One-half of the said sum of $6,-711.92, or $3,355.46.

It follows from what we have above said that, in our opinion, the trial court improperly granted the peremptory writ of mandamus in this case. This cause is therefore reversed and remanded to the trial court for further proceedings in accordance with this opinion.

Reversed and remanded. All the Justices concur