[Hill v. Cameron, et al.]

## Hill v. Cameron, et al.

### Injunction.

(Decided June 30, 1915. 69 South. 636.)

1. *Animals; Quarantine; Tick Eradication.*—Acts 1915, p. 123, supersedes the provisions of section 765, Code 1907.

2. *Same; Statutory Regulation.*—On motion to dissolve an injunction restraining the state live stock inspectors from quarantining complainant's cattle to eradicate ticks, the evidence examined and held insufficient to show that the State Live Stock Sanitary Board had determined upon and put in force such work in the county, under section 765, Code 1907, where complainant's cattle were located prior to the passage and approval of Acts 1915, p. 123, and hence, such county was not excepted from the latter act.

3. *Evidence; Judicial Notice; Rules of Live Stock Board.*—The court cannot take judicial notice of the rules and regulations of the State Live Stock Board.

APPEAL from Limestone Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Bill by John C. Hill against W. W. Cameron and others, to enjoin and restrain them from putting into effect quarantine for the purpose of carrying on the work of tick eradication. From a decree dissolving the temporary injunction, complainant appeals. Reversed and rendered.

[Hill v. Cameron, et al.]

WILLIAMS & ROBERTS, and PAUL HODGES, for appellant.

J. G. RANKIN, SANDERS & THACH, FRED WALL, and W. R. WALKER, for appellee.

GARDNER, J.—This appeal is from the decree of the chancellor of the Northern chancery division, entered June 4, 1915, dissolving the temporary injunction theretofore issued in the cause. The bill shows that the complainant, a resident of Limestone county, Ala., is the owner of certain cattle, which are in his possession in said county, and that these respondents, acting under an order of the commissioners' court of Limestone county, claimed the right, under assumed authority as inspectors of cattle in the work of tick eradication, to force owners of cattle in said county to "dip" the same, and the right to enter upon private property for the purpose of inspecting cattle and premises, and to quarantine any stall, lot, or pasture in which cattle are kept, and to prohibit any owner of cattle from removing, selling, or otherwise disposing of them, and in pursuance of such claim of right or authority, they have interfered with complainant's property, and have committed trespass against it, and against his person, by having him arrested, to enforce compliance with their unlawful demands; that respondents have quarantined the said cattle, and have forbidden complainant to remove, transport, sell, or otherwise dispose of his said property, and have demanded that he "dip" the cattle; that upon his failure to do so these respondents would arrest him, and have him tried as a violator of the law, and that they have, in fact, quarantined his said cattle, and thereby destroyed his property rights in them, and his ability to remove or dispose of them; that they have arrested him at two differ-

ent times, and are making threats of continuous inter-ference with complainant's said property and of the ar-rest of his person. It is further alleged in the bill that respondents are acting without warrant or authority of law, and that the order of the commissioners' court, set out in the fourth paragraph of the bill, is void; that there has been no election upon the question of tick erad-ication in said county, as provided by the act of March 5, 1915 (Acts 1915, p. 123). It is further shown that on April 1, 1915, a notice of quarantine of Limestone county was issued, effective on that day, and duly pub-lished in the newspapers of that county by the state vet-erinarian, which notice begins as follows:

"Auburn, Ala., April 1, 1915.

"The legally authorized officials of Limestone county, Ala., have decided to take up tick eradication. There-fore I hereby quarantine Limestone county for the pur-pose of carrying on the work of tick eradication," etc.

See Code 1907, § 760.

It is further shown in the bill that the commissioners' court, by an order duly entered, placed Limestone coun-ty under quarantine, and provided that said work should begin on February 15, 1915. The order of the commis-sioners' court is set out in full in the bill, but it is not necessary to be repeated here. It appears to have been entered at the November term, 1914, of said court. It is without dispute that Limestone county is under stock law.

There can be no serious question as to the fact that the commissioners' court was acting under the authority of the amendatory act of August 26, 1909 (S. S. 1909, p. 187), declared unconstitutional by this court in *Fergu-son v. Court of Co. Com'rs, Jackson County*, 187 Ala. 645, 65 South. 1028. The substance of the bill, therefore, is that these respondents are assuming authority to act

under a void order of the commissioners' court, and that their actions invade and are destructive of the property rights of the complainant. The bill further avers the insolvency of the respondents. The general equity of the bill seems not to be questioned by counsel for appellees. —*Board of Com'rs v. Orr,* 181 Ala. 308, 61 South. 920, 15 L. R. A. (N. S.) 575. The respondents in their answer admit that they were acting as live stock inspectors of Limestone county, and that the matters complained of by complainant were done by them in such capacity, but they deny that they were acting without authority of law.

In the fifth paragraph of the bill is set out the order of the commissioners' court, hereinafter referred to, as well as the notice of quarantine of date of April 1, 1915, by the state veterinarian, an extract from which is quoted above. The sixth paragraph of the bill concludes as follows: "* * * That they are acting under the orders set out in the fourth and fifth paragraphs hereof, which are the only orders issued by the state live stock sanitary board or by said commissioners' court."

In the second paragraph of the answer this averment finds no denial; but it is averred, along with other things, that on February 15, 1915, the respondent Cameron, as state live stock inspector, began the work of cattle tick eradication, and that he has been engaged in such work up to the present time in Limestone county, and that subsequently (the time not being stated) respondents White and Allen did the same work. It is then averred that they were duly appointed inspectors by the state live stock board and by the state veterinarian. The answer insists that the respondents were acting under authority of law, and in the sixth paragraph thereof it is contended that the act of March 5, 1915, hereinafter referred to, does not affect the situation in

Limestone county for the reason that prior to the passage of said act the state live stock sanitary board had inaugurated and taken up the work of tick eradication in said county of date February 15, 1915.

The answer shows that respondent Cameron is a federal inspector, doing work in Alabama; that he has been appointed by the state live stock board as an inspector in the state, and is acting in such capacity without compensation. It is further insisted in the answer that the provision of the act of March 5, 1915, is not the exclusive method of placing a county under the influence of sections 757-777 of the Code of 1907, and that said act does not repeal the power of the state live stock board to put into effect the provision of said statutes. There was offered upon the submission a separate affidavit of the respondent Cameron, but a careful reading of it does not disclose that it adds materially to the averments of the answer. It shows, however, that the official quarantine has been in operation in Limestone county since April 1, 1915.

In the case of *State v. McCarty,* 5 Ala. App. 212, 59 South. 543, speaking of the law here under consideration, the writer of the opinion said:

"It cannot be denied that the motive which prompted the Legislature in placing these statutes in our code of laws was wise and beneficent."

The opinion emphasized the importance of legislation of this character. While in full accord with the sentiments expressed in this regard, this court, in the performance of its duty, which is solely to declare the law, was constrained to declare the act of August 26, 1909, heretofore referred to, void, as having been passed in violation of our constitutional provision.—*Ferguson v. Court of County Com'rs, supra.* In the *Ferguson Case,* speaking of the several amendments to this law, it was

said: "The above amendments clearly indicate that the legislative mind was disturbed only concerning what localities should be affected by the law."

The act of August 26, 1909, had left this question to the court of county commissioners of the county to determine when the matter should become effective therein. Prior to the passage of the act, under the provisions of section 765 of the Code, the work of cattle tick eradication was left to be undertaken in any county or any part of the state when the state live stock board deemed best. Limestone county is under stock law, and therefore section 770 of the Code and the amendatory act thereto of August 26, 1909, referred to and noted in *Ferguson v. Court of County Com'rs, supra,* need no comment here, especially as they were expressly repealed by the act of February 19, 1915. It therefore appears that, the act of August 26, 1909, having been stricken, the Code provision (section 765), which left it to the determination of the state live stock sanitary board as to when the work of cattle tick eradication should be taken up in any county of the state, was in force and effect. With this situation in view, and no doubt having in mind the decision of this court in the *Ferguson Case, supra,* the Legislature, by the act of March 5, 1915, left the determination of the question to a vote of the people. The title of the act, and sections 9 and 11 thereof, read as follows: "To submit to the qualified electors of each of the counties of this state the question of whether or not the work of tick eradication shall be taken up in said county, under the state live stock sanitary board as provided by law."

"Sec. 9. If a majority of the electors voting in said election shall vote in favor of tick eradication, the work shall be taken up in said county within three months after said election, as is provided by law, and if a ma-

jority of the electors vote against tick eradication, the work shall not be taken up in said county."

"Sec. 11. That all laws and parts of laws in conflict with this act be and the same are hereby repealed."

(1) In the light of the history of the amendments which relate to this subject, as shown in the *Ferguson Case, supra,* and in view of the provisions of the act of March 5, 1915, we are of the opinion that there can be no serious question that the legislative intent was that the provisions of this act should supersede all others, particularly that portion of section 765 in so far as it is applicable to the question here under consideration. Indeed, the act itself expressly repeals all laws in conflict therewith. The act clearly shows the legislative intent that the work of cattle tick eradication should not be taken up in any county in the state unless and until an election shall be held as therein provided and a majority of the qualified electors voting in said election should declare in favor of the same. The provision of section 765 of the Code which left it to the determination and discretion of the state live stock board as to whether or not said work should be taken up in any county of the state was necessarily, in our opinion, in direct conflict with the spirit, if not the letter, of the act, and was therefore repealed thereby.

(2) The insistence is made, however, that if the said work had been taken up by the board, under the authority of section 765 of the Code, prior to the passage of the act of March 5, 1915, and the board, in the exercise of its discretion, had determined that the said work should be taken up in Limestone county, then the passage of the act would not affect said county—upon the principle that the courts will not construe a legislative enactment so as to control or affect past transactions, unless the Legislature expressly declared an intention to give the

enactment a retroactive operation.—*Dickens v. Dickens,* 174 Ala. 305, 56 South. 806. This conceded, the question of importance arises as to whether or not the law was in effect in Limestone county under the provisions of said section 765 prior to the passage of the act of March 5, 1915.

. The state live stock sanitary board was established by the act of March 12, 1907 (section 757 of the Code). By section 758 said board was given full power to make or enact such rules and regulations as it deemed necessary for governing the movement, transportation, or disposition of live stock quarantined on account of being affected with or exposed to a contagious disease. Section 759 provided for a state veterinarian, who should, by and with the advice and consent of the board, nominate as many live stock inspectors as deemed necessary. Subsequent sections provided for the quarantining and transportation of stock, for the cleansing and disinfecting of stockyards, etc., and prohibited any interference with inspectors in the execution of their duties. Section 766 provided that the said board might elect or appoint Federal live stock inspectors, who were doing such work in this state, provided they served without pay. The constitutionality of the statute giving the state board the right to pass reasonable rules and regulations was upheld in *State v. McCarty, supra,* which decision has met the approval of this court.—*Ferguson v. Starkey,* 192 Ala. 471, 68 South. 348. Section 7083 of the Code provided penalties for violations of such regulations as the said board might from time to time enact.

It is to be noted that our statute does not provide how the exercise of the discretion, left in the state board, to determine in what counties the provisions of the statute shall be put into effect, is to be evidenced. There is no provision that an order shall be duly entered on any rec-

ord, nor that the same shall be published. Similar acts of other states, which we have examined, require publication of the rules and regulations of the live stock board (4 A. & E. Ency. L. [2d Ed.], 601, citing *Reed v. People,* 1 Parker, Cr. R. [N. Y.] 481) ; and a publication thereof was held to be necessary to comply with the statute and give force and effect thereto. The note to the case of *State v. Rasmussen,* 97 Am. St. Rep. 234, may be of some interest in this connection. In the case of *Asbell v. Edwards,* 63 Kan. 610, 66 Pac. 641, it was held that the live stock sanitary commission was a body of special and limited jurisdiction, that in the quarantining of cattle to prevent the spread of disease it was authorized to proceed in a summary manner, that its acts were therefore to be confined strictly within the limits of the jurisdiction conferred, and that the record of its proceedings should show the authority for making the order of quarantine. See, also, *Pierce v. Dillingham,* 203 Ill. 148, 67 N. E. 846, 62 L. R. A. 888.

It has been held that knowledge or notice of an order of quarantine is necessary in order to sustain a conviction for a violation thereof.—*Crane v. State,* 5 Okl. Cr. 560, 115 Pac. 622, 45 L. R. A. (N. S.) 519; *State v. Butts,* 3 S. D. 577, 54 N. W. 603, 19 L. R. A. 725. In the latter case, speaking of such orders, it was said: "Such an order is unlike a law, knowledge of which is charged against every one."

The case of *Adams v. Milwaukee,* 43 L. R. A. (N. S.) 1066, is of interest in connection with the general subject here under review, and has also an instructive note upon the subject, though we find nothing therein directly in point upon the particular question here involved.

In *State v. McCarty, supra,* on application for rehearing, it was said: "We undertook, in the above opinion, to call attention to the fact that the legislation under

discussion comes within that class of legislation con·
cerning which courts exercise the broadest liberality.
Quarantine regulations affect the state in its most vital
spot—the health of its people, or, as in this case, the
health of its live stock—and it is essential that, in con-
struing statutes passed for the purpose of promoting
such delicate and important subjects, great latitude
should be allowed the Legislature in determining the
character of such laws, and how, when, and by whom, in
their practical administration, they should be applied"
(citing *Blue v. Beach,* 155 Ind. 121, 56 N. E. 89, 50 L. R.
A. 64, 80 Am. St. Rep. 195, among other authorities).

(3) We are not here concerned, however, with the
question of any mere formality of the rules and regula-
tions of the state live stock board. There is no statute
providing for publication of such regulations, and we are
not prepared to say, therefore, that publication is neces-
sary. That such regulations are, as a matter of fact, in
some manner placed in durable form we entertain no·
doubt, although, as stated in *Ferguson v. Starkey, supra,*
we do not take judicial cognizance of such rules. Section
767 of the Code provides payment for the printing of
such regulations. The statute does not require that there
shall be any formal order by the board whereby to deter-
mine whether the work of tick eradication shall be ex-
tended into any particular county. We are not prepared
to say that this is essential to such end, although we are
mindful of the fact that such determination by the board
affects materially the owners of stock in such locality,
and that criminal prosecutions under the statute may
result. No order of the state live stock board, either for-
mal or informal, to the effect that the work of tick eradi-
cation shall be taken up in Limestone county, is shown
by this record.

[Hill v. Cameron, et al.]

It may be said that the history of the statute, with its amendments, demonstrates that the question concerning the particular locality in which the work should be taken up was one of some perplexity to the lawmakers— a result, doubtless, of more or less opposition to the law on the part of some of those to be affected thereby. Notwithstanding the importance of the question, however, no provision appears to have been made requiring any formal order on the part of the board, or notice thereof by publication. Passing by this question, therefore, we may concede, for the purposes of this case, that the determination of said board to extend the work of tick eradication into any particular county or locality of the state may be evidenced by its activity in actually putting into effective operation, in such locality, the quarantine regulations authorized by the statute. If such be conceded, however, for the purposes of this case, it must certainly follow that such decision of the board should be evidenced in an unequivocal manner.

In the instant case we are asked to hold that the said board had determined, as authorized by statute, to extend said work into Limestone county, as evidenced by what had been done—that is, by its action and conduct in the premises. We quote again from *State v. McCarty, supra*: "While the legislation under discussion is not a local, but a general law, many of its provisions can be in effect only in limited portions of the state at the same time, and the provisions of the law of which the appellee complains cannot apply to all stock in the state, or to all places in the state, but only to diseased or infected stock, or to diseased or infected places. The powers, therefore, conferred upon the board, can only be exercised by them in the sections of the state which have been placed under quarantine."

While we may concede that, for the law to be effective and to attain the desired results, quarantine is absolute-

ly essential, and while we may be inclined to agree with the above-quoted excerpt, we do not find it necessary to go that length in the instant case, and it is unnecessary that we commit ourselves unqualifiedly to the proposition that the determination of the board to take up the work of tick eradication in any particular county could only be evinced (aside, of course, from any formal order to that effect) by first placing that locality under quarantine. However this may be viewed, it must be confessed that the placing of the quarantine is a matter worthy of much consideration. In the instant case the quarantine was not placed by the state veterinarian until April 1, 1915, which, of course, was after the passage of the act of March 5, 1915, and therefore it can be of no evidential value to the respondents here. If this work was not taken up under the decision of the board prior to the act of March 5, 1915, said board was without authority to inaugurate the work without first obtaining a favorable expression by vote of the people as provided by said act. The notice of quarantine of April 1, 1915, refers to the action of the local authorities—meaning, of course, the order of the commissioners' court above referred to. And if this notice is of any evidential value whatever, it would tend to indicate that the state live stock board had taken no action in the premises. Aside from this one notice, no order of the board is shown, and no action of said board appears.

Respondent Cameron insists that he began work as state live stock inspector on February 15, 1915, under authority of the state live stock sanitary board. No order of the board is shown; but it may be assumed that Cameron received his appointment (he being a Federal veterinarian and live stock inspector, and acting without pay) under provision of section 756 of the Code. It is entirely consistent with his affidavit and his answer

that, by virtue of his appointment, he was given authority to assist, in a general way, the local authorities in the work of tick eradication, wherever and whenever such local authorities may desire or request. It does not appear from the answer when the other respondents were appointed or began to serve as inspectors, and the question of time is, of course, here very material. It is therefore manifest that reliance is had upon the appointment of respondent Cameron as inspector, and his work in connection with his duties also as an inspector under Federal authority. What was done by him prior to March 5th is not made to appear with any effort at particularity or detail. We think it clear, however; without further comment, as above indicated, that the averments of the answer in this regard are insufficient to evince a decision or determination of the state board to take up the work of tick eradication in that particular county, as was authorized by said section 765 of the Code.

We have previously pointed out that the bill alleges that the respondents were acting *solely* on the authority of the order of the commissioners' court and the notice of quarantine given by the state veterinarian, and that the answer contains no denial of this. In *Rembert v. Brown,* 17 Ala. 667, it was said: "An injunction should not be dissolved, unless the answer in clear and explicit terms denies the equity of the bill.   *   *   *   But if the answer be evasive or uncertain, or if the case made by the answer does not clearly show that the complainant is not entitled to relief, the injunction should be retained until the final hearing."

And in *Mobile & Montgomery Ry. v. Ala. Mid. Ry.,* 123 Ala. 145, 26 South. 324, it was said that: "To overthrow allegations of facts in the bill, the answer must deny the existence of such facts specifically and without equivocation."

[Hill v. Cameron, et al.]

That the answer in this case does not meet the requirement of the rule long recognized in this state is quite clear, if the respondents were acting under the valid authority of the state board, pursuant to a determination of said board to take up tick eradication in Limestone county, it was certainly a matter clearly within their knowledge, and it should have appeared, and without equivocation or evasion. Indeed, the mind is irresistibly led to the conclusion, from an examination of this record, that the parties were acting pursuant to the order of the commissioners' court, without taking note of the fact that the act of August 26, 1909, had been sricken down. That they acted in good faith is not questioned; indeed, that fact is not here involved.

It is therefore not made to appear that the work of cattle tick eradication had been determined upon and put in force in Limestone county prior to March 5, 1915, by any order or proceeding of the state live stock board, formal or informal, oral or written, nor that there was any such action on their part, or under their instructions, as to indicate such determination or intention. The remedy for said county, therefore, lies in an election to be held as provided by the act of March 5, 1915, assuming, of course, that this record, and our construction of the same, presents the situation as actually there existing. It is conceded that no such election has been held in Limestone county. The conclusion follows that the chancellor erred in dissolving the temporary injunction, and his decision to that effect will be reversed, and a decree here entered denying the motion to dissolve the temporary writ of injunction.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.